UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL VASQUEZ,

                Plaintiff,

– against –

CITY OF NEW YORK; NEW YORK
CITY POLICE DEPARTMENT;
POLICE OFFICER "JOHN DOE" #1
THROUGH "JOHN DOE" #4
(first names being fictitious); *and* NEW
YORK CITY POLICE SERGEANT
"JOHN DOE" #1 (first name being
fictitious),

                Defendants.

**OPINION & ORDER**

20-cv-4641 (ER)

---

RAMOS, D.J.:

    Michael Vasquez brought this 42 U.S.C. § 1983 action, alleging that defendants unlawfully detained and shot him while he was shopping at a Whole Foods supermarket in New York City. Doc. 3 (Compl.). Before the Court is defendant New York City's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) with respect to the *Monell* claim. Doc. 50. For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

### A. Factual Background[1]

    On March 24, 2018, Vasquez was detained by two store security guards while shopping at a Whole Foods supermarket on 125th Street in Manhattan. ¶ 16. The security guards called the police, and four New York Police Department officers arrived on the scene shortly thereafter ("the NYPD Officers"). ¶¶ 16–17. The NYPD Officers asked Vasquez whether he had any weapons on him, and Vasquez told them he was carrying a knife. ¶ 17. The NYPD Officers then ordered him to remove the knife from his pocket.

---

[1] Unless otherwise noted, citations to "¶ __" refer to the complaint, Doc. 3.

*Id*. As Vasquez reached for the knife in his pocket, each of the NYPD Officers drew their firearms and pointed them at him. ¶ 18. Vasquez, fearing for his safety, took one step backwards. ¶ 19. In response, one officer (whose identity is not known) discharged his firearm, striking Vasquez multiple times, including in the upper right chest, left elbow, and left lower quadrant. *Id*. Vasquez was taken to a hospital, where he underwent surgery. ¶ 20. As a result of the gunshot wounds, Vasquez suffered nerve damage in his shoulder and left arm resulting in the loss of use of his left arm. *Id*.

Vasquez was ultimately convicted of aggravated assault on a police officer in connection with the March 24, 2018 incident.[2] ¶ 22. Vasquez is currently serving a prison sentence for that offense. *Id*.

### B. Procedural Background

Vasquez brought the instant action on July 2, 2020 pursuant to 42 U.S.C. § 1983 against the City of New York ("the City"), the New York City Police Department ("NYPD"), and the NYPD Officers who were named as John Doe defendants. Compl. He alleges that the defendants violated his right to: (1) be free from excessive force in the course of an arrest, and to be free from unreasonable searches and seizures, as required by the Fourth and Fourteenth Amendments; (2) due process under the Fifth and Fourteenth Amendments; and (3) be free from cruel and unusual punishment, as required by the Eighth and Fourteenth Amendments. *Id*. Vasquez also brought a *Monell* claim against the City of New York. *Id*; *see also Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

The City answered on July 6, 2021. Doc. 16.

On May 13, 2022, more than four years after the March 24, 2018 incident, Vasquez filed a first amended complaint identifying the names of the "John Doe" Officer Defendants without first seeking leave from the Court to do so (Doc. 26), a step required

---

[2] The parties provided no additional information concerning the particulars of Vasquez's conviction.

by the Court's discovery plan (Doc. 23). During a conference held on June 10, 2022, the Court granted Vasquez leave to move to file an amended complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Vasquez filed a motion to amend the complaint to include the actual names of the four John Doe defendants on July 7, 2022. Doc. 35. The Court denied Vasquez's motion to amend his complaint on March 6, 2023 because Vazquez failed to: (1) meet the New York statute of limitations period for personal injury claims when he sought to amend; (2) adequately plead that the amended complaint relates back to the original complaint per Rule 15(c)(1)(C); (3) demonstrate that he exercised due diligence which precluded him from utilizing C.P.L.R §1024 to substitute the John Doe defendants; and (4) show good cause for the delay. Doc. 49 at 5–11.

On April 8, 2023, the City brought the instant motion for judgment on the pleadings. Doc. 50.

## II. LEGAL STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). Accordingly, a motion for judgment on the pleadings should be granted "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam).

In adjudicating a motion for judgment on the pleadings, the Court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*,

582 F.3d 418, 419 (2d Cir. 2009)). The Court also considers any documents incorporated into the complaint by reference or integral to the complaint, provided there is no dispute regarding their authenticity, accuracy, or relevance. *Id*. Finally, the Court accepts as true the complaint's factual allegations and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

### III.   DISCUSSION

#### A.  The Court Cannot Consider Extrinsic Evidence

In ruling on a Rule 12(c) motion, "a Court may review only the pleadings, any documents that are attached thereto, incorporated by reference, or those 'integral' to the allegations, together with any facts of which a Court may take judicial notice." *Century Sur. Co. v. Marzec*, No. 12-cv-5540 (JPO), 2013 WL 3919383, at *2 (S.D.N.Y. July 30, 2013); *see also McCoy Assocs., Inc. v. Nulux, Inc.*, 218 F. Supp. 2d 286, 290 (E.D.N.Y. 2002) ("As suggested by the name of such a motion, a court analyzing a motion under Rule 12(c) may look only at the 'pleadings,' *i.e.*, the complaint, the answer, the counterclaims and replies thereto, the third-party complaint, and the answer to the third-party complaint."). Parties cannot supplement their pleadings via facts alleged in their briefs. *See Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (summary order) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint.").

In his memorandum in opposition, Vasquez cites to the NYPD Misconduct Complaint Database ("the Database"), a source never included in the pleadings, which is a repository of complaints made by the public on record with the Civilian Complaint Review Board ("CCRB").[3] Vasquez alleges that the database contains "a very well-

---

[3] The NYPD Misconduct Database was created by the New York Civil Liberties Union obtained through Freedom of Information Law requests. *NYPD Misconduct Complaint Database*, NYCLU, https://www.nyclu.org/en/campaigns/nypd-misconduct-database (last visited Nov. 15, 2023). The CCRB is an independent agency that investigates complaints against NYPD officers. *About the CCRB*, NYC CCRB, https://www.nyc.gov/site/ccrb/about/about.page (last visited Nov. 15, 2023).

4

documented history of the NYPD and its Officers' and employees' use of excessive force." Doc. 55 at 14. He also argues that the CCRB Officer Disciplinary records ("the Disciplinary Records") and other sources demonstrate the same. Vasquez references the Database to bolster his argument that the NYPD allowed its officers and employees to "unlawfully use excessive force against individuals being arrested so much so that it has amounted to an unofficial custom." *Id*. Vasquez states that the Database contains "unique complaint records" involving thousands of NYPD Officers, but does not specify what conduct the complaints concern. *Id*. Vasquez also argues that the Database's descriptions of incidents of excessive force show that the City "has been aware of a multitude of complaints against its NYPD officers for excessive use of force and demonstrated deliberate indifference." *Id*. at 17.

Vasquez did not refer to the Database, CCRB, or the Disciplinary records in his Complaint, yet relies on these sources as integral support for his *Monell* claim against the City in his memorandum in opposition. The Court finds that the references to the Database, CCRB, and the Disciplinary records are not properly before the Court on a Rule 12(c) motion. *See* Shah, 252 F. App'x at 366.

### B. The Court Grants the City's Motion for Judgment on the Pleadings

Vasquez's sole remaining claim is against the City pursuant to *Monell*. He argues that the City, acting through its NYPD Officers, subjected him to excessive force in violation of 42 U.S.C. § 1983 in connection with his arrest on March 24, 2018. He alleges that the City is liable pursuant to *Monell* under both custom or practice theory and as deliberate indifference based on failure to train or supervise. In support of the *Monell* claim, Vasquez alleges:

> ¶ 55. At all relevant times herein, Defendant City of New York, acting through its NYPD, developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's constitutional rights which caused the violation of such rights.

5

¶ 56.  Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the fourth, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.

¶ 57.  The constitutional abuses and violations by Defendant City of New York, through the actions of its Police Department and all named Defendants, were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant City of New York, including the failure:  (a) to adequately supervise and train its officers and agents, including Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including Defendants; and (c) to adequately and properly investigate citizen complaints of police misconduct, and instead, acts of misconduct were tolerated by the City of New York.

¶ 58.  Upon information and belief, Defendant City of New York has, acting through its NYPD, developed, implemented, enforced, encouraged and sanctioned a de facto policy, practice, and/or custom of unlawfully assaulting, battering, seizing, shooting, and exercising deadly force against individuals, without reasonable or unlawful justifications.

¶ 59.  Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.

¶ 60.  Defendants have acted with deliberate indifference to the constitutional rights of Plaintiff.  As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused him to suffer severe physical, mental and emotional injury and pain, in addition to severe mental anguish, suffering, humiliation and embarrassment.

Compl. ¶¶ 55–60.

*Monell* liability is a particular theory of liability for § 1983 claims against municipalities.  *See Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under [§ 1983] if the governmental body itself

6

'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell*, 436 U.S. at 692)).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that:  (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

The Second Circuit has established a two-pronged test for *Monell* claims.  First, the plaintiff must prove "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official]." *Johnson v. City of New York*, No. 06-cv-9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).  Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of his constitutional rights.  *Id*.  Lawsuits brought against state officials in their official capacity are treated as cases against the State, and "the entity's 'policy or custom' must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citation omitted).

To satisfy the first prong of the *Monell* test on a motion to dismiss, a plaintiff must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Cuellar v. Love*, No. 11-cv-3632 (NSR), 2014 WL 1486458, at *10 (S.D.N.Y. Apr. 11, 2014) (quoting *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)).  Vasquez

alleges that the NYPD Officers' use of excessive force constitutes a persistent or widespread custom and that the City's failure to train or monitor the NYPD Officers amounts to deliberate indifference. *See* Compl. ¶¶ 55–60.

For the reasons stated below, these allegations are not supported by facts that make the inference of culpability plausible.

1. *The Facts Alleged Do Not Support a Claim for Monell Liability Based on a Pervasive or Widespread Custom*

The City argues that the Complaint fails to adequately allege any formal City policy or action by City policymakers that caused the deprivation of Vasquez's rights . Doc. 52 at 10. According to Defendants, Vasquez arguments that the City had a *de facto* policy of excessive force are based on conclusory, boilerplate statements without any supporting facts or evidence. *Id*. at 11–12. Further, Vasquez unfairly extrapolates a widespread practice from a "single instance of a constitutional violation." Doc. 58 at 3.

Under the custom or practice theory of *Monell* liability, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Tieman v. City of Newburgh*, No. 13-cv-4178 (KMK), 2015 WL 1379652, at *16 (S.D.N.Y. Mar. 26, 2015) (quoting *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997)). In order to prevail, Vasquez needs to show that the City "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006) (citing *Monell*, 436 U.S. at 694).

Importantly, courts have dismissed custom or practice *Monell* claims that rely solely on one instance of conduct to prove the existence a persistent and widespread custom. In fact, the very foundation of *Monell* liability rests upon the notion that "isolated acts . . . by non-policymaking municipal employees are generally not sufficient

to demonstrate a municipal custom, policy, or usage that would justify liability." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). *See also, e.g., Schnauder v. Gibens*, 679 F. App'x 8, 10 (2d Cir. 2017) (summary order) (holding no de facto policy was alleged where "apart from a detailed recounting of his own experiences, [the plaintiff's] complaint contain[ed] only general and conclusory allegation[s] that there was . . . a policy" (citation and internal quotation marks omitted)); *Kirton v. Doe*, No. 20-cv-10860 (KMK), 2023 WL 2586279, at *9 (S.D.N.Y. Mar. 21, 2023) (dismissing *Monell* claim because "plaintiff does not point to any instance of excessive force beyond his own"); *Smith v. Westchester Cty.*, No. 19-cv-01283, 2019 WL 5816120, at *5 (S.D.N.Y. Nov. 7, 2019) (dismissing *Monell* claim where plaintiff "describe[d] only his own experiences"); *Oriental v. Village of Westbury*, No. 18-cv-3878 (DRH), 2019 WL 4861413, at *4 (E.D.N.Y. Oct. 2, 2019) (collecting cases).

Similarly, courts dealing with *Monell* claims have "disregarded" the use of "conclusory" allegations that do not provide additional support that a plaintiff's experience is consistent with a larger pattern of similar conduct. *Tieman*, 2015 WL 1379652, at *14 (collecting cases); *see also Duncan v. City of New York*, No. 11-cv-3826 (CBA), 2012 WL 1672929, at *2–3 (E.D.N.Y. May 14, 2012) (holding that "boilerplate statements" claiming that New York City had a custom of making and tolerating false arrests and of using excessive force were "insufficient to state a claim of municipal liability under *Monell*"). Courts dismiss conclusory allegations that do not provide any facts allowing the court to infer what "city policies, practices, or customs contributed to or caused the deficiency." *Simms v. City of New York*, No. 10-cv-3420 (NGG), 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011), *aff'd* 480 F. App'x 627 (2d Cir. 2012); *see also Ruiz v. City of New York*, No. 14-cv-5231 (VEC), 2015 WL 5146629, at *12 (S.D.N.Y. Sep. 2, 2015) (describing plaintiff's argument that the alleged misconduct was "repetitive, continuous and systematic" as "vague and conclusory" and dismissing plaintiff's *Monell*

9

claims). In *Bird v. County of Westchester*, No. 20-cv-10076 (NSR), 2022 WL 2263794, at *12 (S.D.N.Y. June 23, 2022), a plaintiff's *Monell* claim was dismissed where the complaint only "allege[d] broadly that [the municipality] 'has engaged in a policy, custom, or pattern and practice'" of unconstitutional conduct and that defendants "are part of a larger pattern and practice of similar misconduct." *Bird* held that these conclusory statements, without more, are insufficient to meet the pleading standard. *Id.*

Accordingly, Vasquez's argument that there is a de facto policy of excessive force within the NYPD fails because it relies solely on this incident alone as evidence of a permanent and long-standing pattern. *See Jones*, 691 F.3d at 81. And, in his pleadings, Vasquez fails to provide any additional evidence, data, or lawsuits that could plausibly establish that the NYPD's use of excessive force is a pervasive or widespread custom. Instead, he claims:

> Upon information and belief, Defendant City of New York has, acting through its NYPD, developed, implemented, enforced, encouraged and sanctioned a de facto policy, practice, and/or custom of unlawfully assaulting, battering, seizing, shooting, and exercising deadly force against individuals, without reasonable or unlawful justifications.

Compl., ¶ 58. This conclusory allegation, standing alone, is insufficient to prove a longstanding, widespread, and pervasive custom. *See Bird*, 2022 WL 2263794 (S.D.N.Y. June 23, 2022).

### 2. The Facts Alleged Do Not Support a Claim for Monell Liability Under a Theory of Failure to Supervise and Failure to Train

Next, Vasquez argues that the City failed to train or supervise its employees to such an extent that it constitutes deliberate indifference and therefore a City custom. Doc. 55 at 15–18. The City, however, argues that Vasquez merely asserts legal conclusions and boilerplate assertions insufficient to impose *Monell* liability. Doc 52 at 13–14. It notes that Vasquez fails to identify any specific deficiency in a training or supervision program, which is necessary to establish a failure to train. *Id.* at 14.

Moreover, his pleadings do not establish a causal nexus between any training program and "plaintiff's alleged injury, specifically, that though he was holding a knife, he did not present a threat for which force was necessary." Doc. 58 at 5.

When a municipality does not respond to the obvious need for training, its deliberate indifference or acquiescence may properly be considered city policy that is actionable under § 1983. *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). If "a local government is faced with a pattern of misconduct and does nothing, [it] compel[s] the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Tieman*, 2015 WL 1379652, at *18 (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)). The Supreme Court and Second Circuit consider a § 1983 claim against a municipality to be "at its weakest" when it relies on such an alleged failure to train or supervise. *Greene v. City of New York*, 742 F. App'x 532, 536 (2d Cir. 2018) (citing *Connick*, 563 U.S. at 61).

a. *Failure to Supervise*

To establish a custom or policy by showing that the municipality exhibited deliberate indifference to a failure to supervise, the plaintiff must "show that the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). A plaintiff may plead such a failure to supervise in two ways. First, a plaintiff may establish that (1) "there was a pattern of allegations of or complaints about similar unconstitutional activity," and (2) "the municipality consistently failed to investigate those allegations." *Tieman*, 2015 WL 1379652, at *21. Alternatively, a plaintiff may plead that (1) "there was a pattern of actual similar constitutional violations," and (2) "the municipality consistently failed to discipline those involved." *Id*. In other words, a plaintiff must not only establish an obvious need but also the municipality's deliberate indifference thereto. *See Vann*, 72 F.3d at 1049 ("An

11

obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."). Thus, to survive a motion to dismiss, plaintiffs must plead sufficient facts to make it plausible that the municipality was "on notice" of similar misconduct. *Mancuso v. Village of Pelham*, No. 15-cv-7895 (KMK), 2016 WL 5660273, at *10 (S.D.N.Y. Sep. 29, 2016).

Vasquez fails to sufficiently plead either method for establishing failure to supervise because he has not shown a pattern of allegations or violations. Like the plaintiffs in *Taranto v. Putnam Cnty.*, No. 21-cv-2455 (KMK), 2023 WL 6318280, at *20 (S.D.N.Y. Sep. 28, 2023), Vasquez does not make any "specific factual allegations regarding any failures to investigate complaints or discipline officers involved," which "dooms [his] claim." Vasquez's complaint only conclusorily alleges that the City's failed to monitor and discipline police officers and investigate citizen complaints. *See* Compl., ¶¶ 27, 57–60. And, in his memorandum in opposition, he summarily concludes that this "is just one incident amongst a multitude of excessive use of force incidents committed by [City] [p]olice [o]fficers," but fails to specifically allege any additional incidents. Doc 55 at 17–18. Thus, he fails to allege any facts concerning the City's awareness and tolerance of misconduct and instead simply assumes that the City is "aware of the widespread nature of the issue and has not acted sufficiently to counter this systemic, widespread problem." *Id*. at 17. Accordingly, Vasquez fails to allege that there was a pattern of allegations or violations sufficient to put the City on notice, such that the City's failure to supervise its employee was a policy of deliberate indifference.

    b. *Failure to Train*

To state a claim for municipal liability based on a failure to train, Vasquez must "allege facts that support an inference that the municipality failed to train its police

12

officers, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries." *See Walker v. City of New York*, No. 14-cv-808 (ER), 2015 WL 4254026, at *11 (citation omitted); *see also Acosta v. City of New York*, No. 11-cv-856 (KBF), 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (dismissing *Monell* claim because the plaintiff simply stated that the municipality "failed to train its police officers as to display a deliberate indifference" and thereby "failed to set forth factual allegations that would support a plausible inference that the [c]ity's 'policies' or 'customs' caused . . . [the] alleged violations of [the] plaintiffs rights"). Failure to train arguments are grounded in the showing of multiple, similar civil rights complaints in comparable contexts to the alleged constitutional injuries or close temporal proximity. *See Brenton v. City of New York*, 404 F. Supp. 3d. 799, 818–19 (S.D.N.Y. Sep. 3, 2019). Additionally, courts reject *Monell* arguments that fail to clearly point out the deficiencies in defendants' training programs. *See Lehal v. Central Falls Detention Facility Corp.*, No. 13-cv-3923 (DF), 2016 WL 7377238, at *11 (S.D.N.Y. Nov. 21, 2016) (dismissing failure to train *Monell* claim in part because each "of plaintiff's new allegations regarding a supposed lack of training are too general and speculative" and collecting cases). Thus, "mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by the factual details." *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. Sep. 26, 2012).

      Vasquez has failed to plead any specific deficiency within the City's training programs, policies, or procedures that could have led to the alleged constitutional violations. He "do[es] not identify procedural manuals or training guides, nor [does he] highlight relevant particular aspects of police training" regarding excessive force, as would be required to plead a failure to train claim. *See Marte v. New York City Police Dep't*, No. 10-cv-3706 (PKC), 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010).

Moreover, the single incident at issue here is insufficient to establish liability for the City. *See Brenton*, 404 F. Supp. 3d. at 818–19.  Thus, just as Vasquez failed to plead a pattern of allegations or violations sufficient to state a claim for failure to supervise, he has likewise failed to state such a pattern for purposes of a failure to train claim.  In sum, Vasquez's pleadings rely on his experience alone and conclusory, unsubstantiated statements, which are insufficient to plausibly allege a failure to train or supervise claim. Vasquez's *Monell* claim must therefore be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, the City's Rule 12(c) motion to dismiss Plaintiff's § 1983 claim for *Monell* liability is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 50, and close the case.

It is SO ORDERED.

Dated:   December 11, 2023
         New York, New York

EDGARDO RAMOS, U.S.D.J.